**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GURPREET SINGH,

Plaintiff

v.

DARIN BALAAM, et al.,

Defendants

Case No.: 3:26-cv-00513-MMD-CSD

**Order**

Re: ECF Nos. 1, 1-1

Plaintiff, a pretrial detainee in the custody of the Washoe County Detention Center, has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and a pro se complaint (ECF No. 1-1).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)

(quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $5.10, and his average monthly deposits were $18.15.

Plaintiff's application to proceed IFP is granted. Plaintiff is required to pay an initial partial filing fee in the amount of $3.62 (20 percent of $18.15). Thereafter, whenever his prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. SCREENING

### A. Standard

Under the statute governing IFP proceedings, “the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.” 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, “[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.” 28 U.S.C. § 1915A(a). In conducting this review, the court “shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.” 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff’s favor. *Jenkins v. McKeithen*,

395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In his *pro se* complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff asserts violations of his constitutional rights, related to his October 2025 arrest, and the criminal proceedings and detention resulting therefrom.

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To obtain relief pursuant to section 1983, a plaintiff must establish a "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the § 1983 elements, a complaint must identify what constitutional right each defendant violated and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983); *see also Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019) (defendant must have "personally played a role in violating the Constitution.").

The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017) (citing *Albright*, 510 U.S. at 271). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

1) Claim 1

In Claim 1, Plaintiff asserts that he was arrested on October 16, 2025, without probable cause. He asserts his first appearance in court was not for twenty days, and that it was "without having counsel with my appointed public defender."[1] He asserts that although the record reflects that he waived his right to a speedy preliminary hearing, he did not actually make such a waiver. Ultimately, his preliminary hearing was conducted, and he was arraigned in January 2026. Although he asserted several times that he wanted a speedy trial, more than five months later he

[1] This assertion potentially raises a Sixth Amendment deprivation of counsel claim, but because Plaintiff expands upon and clarifies his assertion in Claim 3, the court will discuss it there.

was still awaiting his trial. Finally, he asserts the signature line for the magistrate on the arrest warrant was blank, that no judicial officer ever authorized his seizure, and the arresting officer did not swear to the truth of the allegations in the arrest warrant. He asserts these constituted violations of due process and malicious prosecution. (ECF No. 1-1 at 2-3.)

At the time he filed the complaint, Plaintiff was a pretrial detainee; he remains one to date.[2]

First, Plaintiff does not identify whether he is asserting a claim of substantive or procedural due process.

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Much of what Plaintiff alleges is covered by another constitutional provision – namely, the Fourth and Sixth Amendments – so the applicability of substantive due process otherwise is not clear.

Procedural due process claims lie where a plaintiff is deprived of a life, liberty, or property interest without adequate procedural protections. *See Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Again, it is not clear what specifically Plaintiff believes was a violation of his due process rights.

Plaintiff may amend his complaint to clearly identify the due process claim he makes.

As to malicious prosecution, the complaint appears to be making both that claim and, possibly, a false arrest claim.

---

[2] *See* https://www.washoesheriff.com/inmate-search.php?name=SINGH&key=957d1ee8a8b0e0de0634028d84957ae0#isr (last visited Nov. 10, 2026); https://caseinfo.washoecourts.com/node/393 (last visited Nov. 10, 2026).

The Fourth Amendment guarantees a citizen's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided the arrest was without probable cause or other justification." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted); *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (citation and quotation marks omitted).

"If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Wallace v. Kato*, 549 U.S. 384, 390 (citations omitted).

The Supreme Court has recognized a Fourth Amendment claim for malicious prosecution, the gravamen of which "is the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). To prevail on this claim, "a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024). Plaintiff must also show "that he obtained a favorable termination of the underlying criminal prosecution." *Thompson*, 596 U.S. at 39.

A "malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure." *Chiaverini*, 602 U.S. at 564. A malicious prosecution claim can still

be maintained even where a plaintiff is maintained in custody on both valid charges and invalid charges. *Id.* at 558-59.

Plaintiff's complaint alleges that he was arrested without probable cause and on an invalid warrant, but nowhere does he identify the alleged basis for his arrest or any specific reasons why there was no probable cause to arrest him. Plaintiff has therefore failed to allege sufficient facts to state a plausible claim for false arrest. This claim, to the extent Plaintiff intends to make it, will be dismissed without prejudice, with leave to amend.

Plaintiff has failed to state a malicious prosecution claim for the same reasons. In addition, he has failed to state a claim because he has not alleged the proceedings on the maliciously prosecuted charges have terminated in his favor. The malicious prosecution claim will therefore also be dismissed without prejudice, with leave to amend.

Claim 1 also identifies the Sixth Amendment and refers to Plaintiff's speedy trial rights. To the extent Plaintiff intended to assert a claim for violation of his speedy trial rights, such claim must be dismissed. Monetary damages are not available for a speedy trial violation. *Betterman v. Montana*, 578 U.S. 437, 444 (2016) ("The sole remedy for a violation of the speedy trial right [is] dismissal of the charges."). Plaintiff seeks only monetary damages in this § 1983 action and has not requested release from custody or dismissal of the charges -- neither of which can be obtained via a § 1983 action at any rate.[3]

---

[3] "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). A pretrial detainee challenging his continued custody or detention in state court should file his claim pursuant to 28 U.S.C. § 2241. *See McNeely v. Blanas*, 336 F.3d 822, 824 (9th Cir. 2003).

In addition, and relatedly, Plaintiff alleges that he did not receive a speedy preliminary hearing. This does not state any colorable constitutional violation because a "preliminary hearing itself is not constitutionally required." *See Peterson v. California*, 604 F.3d 1166, 1169 (9th Cir. 2010); *see Trotter v. Johnson*, No. CV 19-05750-CAS (AS), 2019 WL 7865194, at *7 (C.D. Cal. Oct. 29, 2019), *report and recommendation adopted*, No. CV 19-05750-CAS (AS), 2020 WL 1663154 (C.D. Cal. Apr. 3, 2020) ("Petitioner has failed to cite, and the Court has been unable to locate, any United States Supreme Court authority holding that a defendant's federal constitutional rights are violated when a state court does not hold a timely preliminary hearing in accordance with state law. Indeed, it does not appear that any federal constitutional right is implicated by a state requirement for a speedy preliminary hearing.") (citing cases).

Claim 1 will therefore be dismissed with leave to amend.

2) <u>Claim 2</u>

In Claim 2, Plaintiff alleges that his rights to call his family and to not be punished were violated. Plaintiff asserts that initially, while in detention, he was allowed to call India 2-3 times a day. But on February 19, 2026, he was "restricted." When he tried to call on the computer, he got a message that the facility was not available. Plaintiff submitted a grievance, and a sergeant responded that he could not do anything about it and suggested that Plaintiff email the phone company. Plaintiff sent multiple emails to the phone company and submitted multiple grievances to the facility about it, with no response from either. Eventually, in June 2026, the phones began working again but they still have periodic glitches. (ECF No. 1-1 at 4.)

"Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996). They also "retain some

associational right to communications with those outside prison, especially with family members." *Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1012–13 (9th Cir. 2023).

"Pretrial detainees have a substantive due process right against restrictions that amount to punishment. This right is violated if restrictions are 'imposed for the purpose of punishment.'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citations omitted); *see also Vail v. Elmore*, No. 3:23-CV-00254-ACP, 2026 WL 3001354, at *3 (D. Alaska Oct. 6, 2026).

The problem with Plaintiff's claim is that nowhere does he allege that the sergeant knowingly, or purposefully, or with the intent to punish, deprived him of the right to use the telephone to contact his family in India. At most, Plaintiff alleges the sergeant did not assist him in resolving the phone problem. There are no allegations or facts to support a plausible claim that the sergeant's failure to act was "for the purpose of punishment." Plaintiff's allegations in Claim 2 do not state any constitutional violation.

3) <u>Claim 3</u>

In Claim 3, Plaintiff asserts ineffective assistance of counsel. Plaintiff's allegations here and in Claim 1 may also be attempting to state a more general deprivation of counsel claim in violation of the Sixth Amendment.

Plaintiff asserts that his appointed counsel failed to talk to him before his first court date, on November 6, 2025. He alleges counsel could not be reached by email and did not have a video visit until 45 days after his arrest, and counsel did not come visit him in detention for 80 days. He alleges counsel never answered the phone or called Plaintiff back. Plaintiff made lots of complaints about counsel to various entities with no response. On December 18, 2025, Plaintiff demanded his preliminary hearing, which the court set for December 29, 2025, but his lawyer

changed it to a Young hearing[4] without Plaintiff's knowledge. Counsel scheduled another Young hearing on February 2, 2026, and quit the case. (ECF No. 1-1 at 5.)

"Indigent defendants have a fundamental right, guaranteed by the Sixth and Fourteenth Amendments, to the aid of counsel in a criminal prosecution." *Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024) (internal citation and punctuation omitted). "The right attaches at or after the time that judicial proceedings have been initiated against the defendant whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Once the right attaches, the defendant is guaranteed counsel during any critical stage of the postattachment proceedings." *Id.* at 619–20 (internal citations and punctuation omitted).

Three factors inform whether something is a "critical stage": "[W]hether (1) failure to pursue strategies or remedies results in a loss of significant rights, (2) skilled counsel would be useful in helping the accused understand the legal confrontation, and (3) the proceeding tests the merits of the accused's case." *Id.* at 623 (internal punctuation and citation omitted). An initial appearance, without these factors at play, is not necessarily a "critical stage" of proceedings. *See Farrow v. Lipetzky*, 637 Fed. App'x 986, 988–89 (9th Cir. 2016).

In Claim 1, Plaintiff alleges that he made his "first appearance" in Justice Court "without having counsel with my appointed public defender." (ECF No. 1-1 at 3.) Claim 3 appears to clarify that although he had appointed counsel, but they did not talk before Plaintiff's first appearance on November 6, 2025. (*Id.* at 5.) This does not state a colorable constitutional violation of deprivation of counsel, at least not without sufficient facts to show that Plaintiff was

[4] The court presumes that Plaintiff's reference is to *Young v. State*, 102 P.3d 572 (Nev. 2004), which governs how courts are to evaluate a defendant's requests for substitution of new counsel.

denied counsel at a "critical stage" of the proceedings. The complaint does not allege any such facts, so Plaintiff has failed to state a colorable claim of deprivation of counsel.

More importantly, however, it is unclear who is responsible for any potential deprivation. The complaint suggests the cause of the alleged deprivation was Plaintiff's attorney. But Plaintiff cannot maintain a § 1983 claim against his public defender for actions taken in the role of advocate. S*ee Georgia v. McCollum*, 505 U.S. 42, 53 (1992); *Polk County v. Dodson*, 454 U.S. 312, 320-25 (1981); *Jackson v. Brown*, 513 F.3d 1057, 1079 (9th Cir. 2008). Counsel's communications with Plaintiff, or lack thereof, would be in their role as advocate, and are not therefore compensable via a § 1983 lawsuit.

Finally, Plaintiff identifies the basis of Claim 3 as being "ineffective assistance of counsel." However, claims for ineffective assistance of counsel are not cognizable under § 1983, "despite the statute's 'literal applicability' to the Sixth Amendment, because specific appellate and habeas statutes apply." *Williams v. Trimpey*, No. 2:24-CV-02148 SCR P, 2025 WL 2029238, at *3 (E.D. Cal. July 21, 2025) (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) and *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995)). Plaintiff's ineffective assistance of counsel claim must therefore be dismissed.

4) <u>Other Defendants and Amendments</u>

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id*. (citations omitted). In other words, the plaintiff "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218,

1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 140 S. Ct. 159 (2019) ("inmates must show that each defendant personally played a role in violating the constitution.").

"An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

"Causation exists when the defendant either (1) knows about and acquiesces in the constitutionally defective conduct as part of a common plan, or (2) sets in motion a series of acts by others which the defendant knows or reasonable should know would cause others to inflict the constitutional injury." *Seagraves v. Wash. State Dept. of Children Youth and Families*, 182 F.4th 1083, 1088 (9th Cir. 2026) (citation and quotation marks omitted).

Plaintiff identifies only one of the listed defendants in the body of the complaint, leaving the court to speculate as to how any of the other defendants allegedly violated his rights. In amending his complaint, Plaintiff should take care to explain how each named defendant was involved in each specific violation of his rights.

Similarly, Plaintiff has listed many constitutional amendments, each potentially implicating several disparate claims. While the court has addressed the complaint with respect to those amendments that are clearly identifiable in Plaintiff's factual allegations, Plaintiff should take care in amending his complaint to clearly identify which provisions of which amendments he believes were violated, as well as who was responsible for each violation, particularly as to any alleged constitutional violations the court has not already identified.

## III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**. Plaintiff is required to pay an initial partial filing fee in the amount of $3.62 (20 percent of $18.15). Whenever Plaintiff's prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed or is otherwise unsuccessful. The Clerk should **SEND** a copy of this Order to Chief of Inmate Finance at WCDF, 911 E. Parr Blvd., Reno, NV 89512.

(2) The Clerk shall **FILE** the Complaint (ECF No. 1-1).

(3) The Complaint is **DISMISSED WITH LEAVE TO AMEND**.

(4) The Clerk shall **SEND** Plaintiff the instructions for filing a civil rights complaint by an incarcerated individual and form civil rights complaint by an inmate.

(5) Plaintiff has **30 DAYS** from the date of this Order to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall check the box for the first amended complaint on the court's form civil rights complaint. If Plaintiff fails to file an amended complaint within the 30 days, the action may be dismissed.

**IT IS SO ORDERED**.

Dated: November 13, 2026

Craig S. Denney
United States Magistrate Judge